In the Matter of the Estate of NATHAN LEVINE, Deceased.

Surrogate's Court, Kings County, January 30, 1936.

*Moses & Singer,* for the Public National Bank and Trust Company of New York, as temporary administrator, petitioner.

*George H. Rosen,* for Mary Levine, widow, Louis Levine, Abraham Levine, Lillian Korman, Bertha Goldbaum, Rachel Glaubach and Celia Shalita, children of decedent and objectants.

*Milton M. Wecht,* for the Congregation Tiphereth Israel, legatee.

*Frank Gottlieb,* for Yeshiva De Brooklyn.

*John J. Bennett, Jr., Attorney-General.*

WINGATE, S. The determination of the questions raised by the present application of a temporary administrator for leave to apply moneys of the estate in the payment of carrying charges of real property of the decedent are, to a certain extent, complementary to those determined in the recent decision of this court in *Matter of Pelcyger* (157 Misc. 913). There the questions propounded related in part to the source from which moneys should be taken for salvage operations of estate assets, and the resulting rights of the various parties in the fund realized on ultimate liquidation. The wisdom of the acts of salvage by the fiduciaries was not there questioned. In the case at bar the propriety of prospective actions of a salvage nature are chiefly involved.

The present decedent died on July 8, 1935. His assets consisted mainly of three improved parcels of real property, occupied by tenants, located respectively at 128 Moore street, 31 Delmonico place and 276 Kosciusko street, of a mortgage certificate possessing a face value of $5,000, a diamond stick pin said to be worth $50, and somewhat over $2,100 in cash.

An alleged will has been propounded, which, after bequests of one dollar to his wife and each of his children, specifically devised the three parcels of realty respectively to a brother, a niece and a sister, and specifically bequeathed the proceeds of the mortgage certificate to named religious and charitable organizations. Objections have been interposed to the probate of this document, and the issues raised thereby are now pending and undetermined.

The Public National Bank was named as executor in the propounded instrument, and upon its demonstration that the appointment of a temporary administrator was essential for the management of the real property, it was appointed to act in this capacity without objection by any one.

By petition dated September 26, 1935, the temporary administrator sought permission to employ funds of the estate to the maintenance of the real property, and expenditures to the amount of $834.57 were authorized by order dated October second. These were chiefly for coal, insurance and repairs to the Moore street and Delmonico place houses which were essential for their protection and maintenance in a tenantable condition.

An order entered on October thirtieth authorized the expenditure of an additional sum of $142.58 requested by petition of October twenty-eighth. The main items included in this authorization

were $30 for the payment of first mortgage interest on the Kosciusko street property and $33.16 for liability insurance and $51 for repairs to the heating plant of the building on Delmonico place.

No opposition was interposed to the granting of either of these applications, but objections have been raised to the granting of the petition which is now at bar, and which apparently requests the authorization of a further expenditure in excess of $1,310.57. This sum is made up as follows: Kosciusko street, plumbing repairs, $6.75; second half 1935 taxes, $63.22 and penalties; first mortgage interest due March 1, 1936, $30; total, $99.97, plus tax penalties; Moore street, light furnished to date, $5.98; deposit with electric company, $10; real estate taxes from 1933 to date, $939.75; total $955.71, plus tax penalties; and Delmonico place, light furnished, $3.12; deposit with electric company, $10; repairs to plumbing, $9.25, and to cellar door, $25; first mortgage interest due December 1, 1935, $60, and second half 1935 taxes, $147.52; total, $254.89, and tax penalties.

According to the present petition, the total rents collected from the Kosciusko street property amount to $161 and the expenditures already made on account of it total $81.79, leaving a balance of receipts over expenditures of $79.21. The rents collected from Moore street amount to $730 and the expenditures on account of it to $222.96, showing a credit balance of $507.04. Delmonico place, however, shows receipts of $195.50 and expenditures of $289.03, leaving a deficit of $93.53.

The charitable legatees protest against any further allowances except from income received from the properties themselves, and further objection is raised that the general estate money is being used for the protection of the property of the specific devisees, and that they should take care of their own. Whereas it appears from the petition that the temporary administrator has unavailingly called upon them to do this very thing, this position begs the question, since it is by no means determined that those who are named as devisees will ever receive anything. The contest of the will is still undetermined.

In the ordinary case, the problems of salvage are those of the fiduciaries. Here it is that of the court itself, since the temporary administrator is merely its agency to act as receiver and conservator in the preservation of the estate for those whom it may concern. (*Matter of Hoysradt*, 188 App. Div. 515, 516; *Matter of Burnham*, SLATER, S., 114 Misc. 455, 456; *Matter of Hanford*, FOLEY, S., 113 id. 639, 641; *Riegelman* v. *Riegelman*, 4 Redf. 492, 493.) The powers of a temporary administrator both in respect to personal and real property are specifically regulated by sections 127 and 130 of the

Surrogate's Court Act. He "has authority to take into his possession personal property; to secure and preserve it; and to collect choses in action" by suit or otherwise. It may sell such property, if authorized to do so by the court of its appointment after appraisement and the giving of specified notice. If especially authorized by the court, it may take possession of real property, and receive its rents and profits " or do any other act with respect thereto, which is, in the surrogate's opinion, necessary for  *  *  *  the preservation or benefit of the real property." Subject to the provisions of article 13 of the Surrogate's Court Act and the permission of the court, it may mortgage or sell real property which has come into its hands. It may be authorized to pay any expenses of administration of its trust and also debts, but in the latter regard, authority may be granted only after the completion of the publication of a notice to creditors. (Surr. Ct. Act, § 129.)

The comparatively few adjudications on the subject shed little if any light on the functions or duties of the office which is not inherent in the statements of the act itself. Compressed into a phrase, therefore, a temporary administrator is merely a ministerial agent of the court of his appointment for the collection and preservation of the assets of a particular estate pending the determination and qualification of its proper legal representative. He performs merely the duties of a conservator of the *rem* which has been brought into *custodio legis* by the filing of the petition for probate or administration, pending its adjudication. The *rem* having thus in essence been placed under the dominion of the court, it is the duty of the particular tribunal acquiring jurisdiction to see that it is conserved for those who may ultimately be found entitled to receive it and this duty is performed on behalf of the court and subject to its direction by its particular appointee.

In essence, the duty of the court in the performance of this function corresponds with almost complete exactness with the similar duty of the permanent fiduciary after the appointment of the latter, and the same principles should govern its actions in this regard. Preservation of assets is the essential characteristic of this obligation of both and the considerations which govern the one are almost completely applicable to the other.

In one respect, however, the duty of the court in the conservation of an estate pending the appointment of the permanent custodian, is potentially more onerous and exacting than that devolving upon the executor or administrator. The latter is acting on behalf of definitely ascertained or ascertainable beneficiaries, while with the court, this is not true so long as its domination over the particular property continues. The instant case furnishes an excellent

example of this situation. If the presently propounded will shall ultimately be determined to be valid, the three parcels of real property belong to the respective specific devisees, and the mortgage certificate to the named legatee thereof.

In such a situation, the will would amount, in effect, to a conveyance of the particular parcels of realty to the devisees and of the mortgage certificate to the legatees, who would be entitled to full beneficial enjoyment thereof from the date of death (*Barber* v. *Terry*, 224 N. Y. 334, 339; *Matter of Utica Trust & Deposit Co.* [*Warren*], 148 App. Div. 525, 527, 528), subject to possible recall, or to the impression of a *pro rata* lien in the event that the free assets of the estate were not sufficient for the solution of debts and funeral and administration expenses. Conversely, the several devisees would take their respective properties *cum onere* as of the date of death, and would be under obligation to solve any expenses of maintenance during the periods of their ownership.

The court and its temporary administrator are, therefore, potentially merely agents of the devisees and legatees in the management of the properties specifically given them by the will, if the document shall ultimately be determined to possess legal validity. If, on the other hand, it should be denied probate, their agency is on behalf of the statutory distributees of the estate.

Obviously, the situations which would arise upon the happening of the alternative contingencies are essentially diverse. If the will be upheld, the debts and funeral and testamentary expenses will first be payable from any free assets of the estate which have not been specifically bequeathed or devised, any excess being then payable to others. Only in the event of their insufficiency can the property which was expressly given be called upon for contribution. Conversely, the donees of this property would have no claim on these free assets for the maintenance or conservation of their properties subsequent to the time of the death, which marked the effective date of the gifts.

It follows that in respect to the source and treatment of moneys used for the conservation of the properties specifically given in the will, the situation is closely analogous to that which exists where trustees take over property for salvage purposes as in *Matter of Pelcyger* (*supra*). Each property must be considered and treated separately and any moneys which may be used in the conservation process, like those employed in a salvage operation, become liens upon the ownership of the specific donee, in so far as they have been expended from the general assets of the estate, and must be repaid by the donee or from the devised property itself.

At this point a further consideration presents itself in respect to the adequacy of the underlying security of the specifically devised property for the sums which may be advanced from general assets for its conservation. This, of course, depends upon its value. Were a trustee in a salvage operation to expend, say $10,000 of new money on a property worth only $5,000, he would incur a serious risk, not to say probability, of surcharge, since that exemplar of the homely virtues, the average reasonably prudent man, would not be deemed likely to have done such a thing. Similarly, in a conservation operation, were the court to permit an expenditure for conservation in excess of the value of the thing conserved, the specific devisee might be expected to renounce the gift, thereby throwing the loss represented by the excess of the conservation expenses over the liquidation value of the property, on those entitled to the balance of the estate. Were such a situation to arise, these persons would have just cause for complaint.

It follows that in any case in which a fiduciary contemplates an expenditure of additional funds either for a salvage operation, as in *Matter of Peleyger* (*supra*), or in the conservation of property specifically given by will, it is incumbent upon him to make careful investigation respecting the clear value of the thing which he proposes to salvage or conserve.

In the case at bar the foregoing observations possess no present relevancy in connection with the Kosciusko and Moore street properties, since the income of the former shows a credit balance of $79.21 of receipts over expenditures to date, and the latter of $507.04. They are, however, pertinent in respect to Delmonico place, which shows an operating deficit of $93.53. Since the latter is potentially the property of a person other than these interested in the first two named, the excess of receipts realized on them is no more to be recklessly hazarded than are the free assets of the estate which potentially belong to still others.

Turning now to the specific items of expenditure, authorization for which is sought, it is found that the temporary administrator wishes to expend on behalf of the Kosciusko street property, $6.75 for plumbing repairs, $63.22 and accrued penalties for second half of 1935 taxes, and $30 for interest on the first mortgage which will fall due on March first. As there is no possibility of a loss of the property in the event of present failure to pay the tax item, and since the applicable fund of $79.21 in hand is not sufficient to pay this and other possibly necessary true conservation expenses, this payment will not be approved. The payment of the plumbing item is, however, proper, as will be the interest charge provided the disposition of the probate contest is delayed beyond a point when non-payment of this item would result in an actionable default.

So far as is disclosed by the record, the same considerations apply to the proposed $934.75 tax expenditure in connection with the Moore street property. Here the two items aggregating $15.96 for light and deposit will be approved, payable out of the existing applicable surplus of $507.04.

The failure of the temporary administrator to disclose the pertinent facts respecting the value of the Delmonico place property coupled with the apparent fact that the non-payment of interest on the first mortgage has already created an actionable default, places the court in an embarrassing position. It does not desire to authorize the payment of additional sums on property at the possible expense of other interests; on the other hand, it is hesitant to jeopardize the property in question by failure to authorize essential payments. In this situation, the court will authorize the temporary administrator to borrow further funds from the general estate in an amount not exceeding $107.37 for the payment of the plumbing bill of $9.25, the two electricity items aggregating $13.12 and the interest due December 1, 1935, of $60. The $25 for repairs to the cellar door may be included only if it is essential to the preservation of the property or to prevent voiding the insurance thereon. The payment of the 1935 taxes is disapproved.

In the event that the temporary administrator shall find it necessary to make further application to the court for authority to make conservation payments, it will include in its petition a full statement as to the pertinent facts of the worth of the properties in respect to which the requested authorization applies. particularly where an expenditure other than from accrued net income of the individual property is contemplated.

Enter order on notice.