In the Matter of the Estate of JAMES S. McKEOGH, Deceased.*

Surrogate's Court, Kings County, March 20, 1936.

* See, also, 151 Misc. 327.

*Lott & Livingston,* for the petitioner, George E. Miner, as executor of George F. Alexander, as executor-trustee of deceased.

*Connolly & Frey,* for the Chase National Bank of the City of New York, successor executor-trustee.

*Sanford S. Nussenfeld,* for Anna G. Gough, beneficiary of trust fund.

*Walter F. Carter,* for James A. Cooke and others, contingent beneficiaries in trust fund.

*Edward J. S. Farrell,* for Kathleen Menogue, residuary legatee.

WINGATE, S. Questions akin to those recently considered in *Matter of Pelcyger* (157 Misc. 913) and *Matter of Levine* (158 id. 116) are presented in the objections of the income beneficiary to the form of decree now submitted for settlement herein.

As set forth in the account, the assets of the estate consisted chiefly of a parcel of real property appraised at $5,000, and eight bonds and mortgages having a face value of $11,825. All may be classed as frozen assets. Since the filing of the account, the trustee has acquired by deed, in lieu of foreclosure, an additional parcel of real property in place of two of the mortgages. Tax and assessment liens thereon aggregate $486.61. The interest payments on three of the other mortgages are in serious default, and tax arrears on two of them total $768.69. There are also arrearages for taxes and assessments amounting to $422.22 on the real property which came to the fiduciaries from the testator.

The questions raised related, in effect, to the authority of the trustee to divert portions or all of the income received on the paying investments to those which are presently in default.

In the solution thereof, a differentiation must be made between the three classes into which the holdings naturally divide themselves. These concern, *first,* the real estate received from the testator; *second,* the mortgages still on hand, and *third,* the mortgages which have been converted into real estate for salvage purposes.

By the terms of the will three general legacies, aggregating $2,100, were given, a trust of $10,000 was erected for the life benefit of the present objectant, and the residue of the estate was given to another. Sufficient liquid assets were found available to pay the first class of benefits, but the trust principal and the remainder distribution are presently tied up in the non-liquid holdings. It is, of course, obvious that there was a parity of obligations of the executor in the solution of the general legacies and the payment of the trust principal, wherefore the preferred satisfaction of the outright general legacies might well have formed the basis of a valid objection to

his acts. This course was, however, not pursued, wherefore the present situation is precisely the same as if the assets of which the decedent died seized and possessed consisted merely of the property presently on hand, and his only beneficiaries those interested in the trust and the remainderman.

Since general conditions render the present liquidation of the assets of the estate impossibe., it follows that they are in reality held on two separate trusts for liquidation, the interest of the testamentary trust being preferred and being that proportion of the total value which $10,000 bears to the total sum which may ultimately be realized on the final liquidation. Neither benefit has, at the present time, an exclusive interest in any individual asset item, and consequently neither is entitled, to the exclusion of the other, to the income derived from any particular piece of property. Conversely, the income which may be attributable to either is not exclusively responsible for the charges which may properly be assessable against income.

It is obvious on basic principles that the taxes and other maintenance charges on the real estate received from the testator are properly deductible *pro rata* from the income attributable to both trusts. The situation, until liquidation of this asset is found possible, is precisely the same as if an express authorization for its retention as a trust investment had been incorporated in the will. Such authorization is implied from the necessities of the case, and since the provisions of the will do not bring the situation within the doctrine of *Lawrence* v. *Littlefield* (215 N. Y. 561) and similar authorities, the usual rule must prevail, and ordinary expense payments are payable from income. This includes current taxes. (*Matter of Perlmutter*, 156 Misc. 571, 576; *Matter of Rowland*, 155 id. 826, 827: *Matter of Shepard*, 136 id. 218, 219.) It does not, however, apply to unpaid taxes which were a lien upon the property at the time it came into the hands of the trustee. These are an incumbrance of the same general nature as a mortgage and their principal is as much an obligation of the remaindermen, whether of the testamentary trust or of the enforced residuary trust, as a mortgage would have been. Interest on such incumbrance is as much an obligation of the income beneficiary as other current maintenance charges, but the principal thereof is merely a *pro tanto* diminution of the remainder interest which may not be solved to the enrichment of the remainderman at the expense of the income beneficiary, and if so paid by force of necessity, will entitle the income beneficiary to reimbursement, with interest, when the property is liquidated.

In respect to the property which has already been taken over by the trustee for the purpose of attempting to salvage mortgages

received by such trustee, the rules of *Matter of Chapal* (269 N. Y. 464) and *Matter of Pelcyger* (157 Misc. 913) are directly applicable. The Court of Appeals, in the former opinion, has indicated that all salvage expenses should be borrowed from principal, and such a course is undoubtedly preferable when such funds are available. Here, however, they are insufficient if not wholly absent. In view of the particular solicitude of the testator for the income beneficiary of the trust which he erected, this is an instance in which the trustee should use especially diligent efforts to secure independent capital to finance the sa vage. Whereas, if present income were employed for the purpose, an obligation for its refund to the equitable life tenant would arise, it would be small consolation to her while obliged to live in penury, to know that it would be refunded to her estate subsequent to her death. If the property thus acquired is of sufficient intrinsic worth to justify a salvage operation at all (See *Matter of Levine*, 158 Misc. 116, 121), it should furnish ample security for a salvage loan, and the failure of the trustee to secure one from outside sources in a situation like the present might well be a circumstance of interest in an application for its removal.

The final class of property is composed of the outstanding mortgages in respect to which default in the payment of taxes on the securing realty has occurred. These taxes are obviously an impairment of the security and value of the investment, but are no direct concern of the present life tenant unless they reach such an amount that a destruction of the investment becomes involved. Even then, were income from other investments to be used in their solution, the income beneficiary whose current return has been diminished by such use, would be entitled to reimbursement on liquidation. (Cf. *Matter of Gatehouse*, 149 Misc. 648, 659.) Since, however, any payment of such taxes would primarily benefit the mortgagor, it would seem that the preferable course of conduct for the trustee, if the asset possesses sufficient intrinsic value to warrant it, would be to foreclose and take over the property for salvage purposes.

Since the decree presently submitted is capable of a construction which would subject the income beneficiary to a diminution of current payments by reason of expenditures primarily due from others, the objections thereto will be sustained and a new one will be submitted on notice in conformity herewith.

Proceed accordingly.