In the Matter of the Estate of HARRY SCHMUTZ, Deceased.

Surrogate's Court, Kings County, May 13, 1936.

*Geis, Forman & Schulze* [*Richard A. Geis* of counsel], for the petitioner, Elizabeth Schmutz, as administratrix, etc.

*George D. Finale*, special guardian for Louis Alfred Schmutz, an infant, distributee.

*Bertram L. Marks*, for the respondent Eloise McAuliffe, distributee, objectant.

WINGATE, S. The present application, made by an administratrix, purports to seek the permission of the court for her joinder in a mortgage of property which has been taken over in the course of a salvage operation of a mortgage of wh ch the decedent was a one-third co-owner. In view of the withdrawal of all objections upon the hearing, the sole remaining question concerns the authority of the administratrix to enter into such a transaction.

At the time of his decease the intestate was an equal one-third owner of a mortgage in the face amount of $17,500 on a six-family apartment building on the east side of West First street, Brooklyn. The mortgagor having defaulted in the payment of interest, taxes, water rates, etc., an arrangement was consummated between the two living co-owners and the administratrix, on the one hand, and the mortgagor on the other, for the delivery of a deed to the former and also for the sale of the interests of the mortgagor in certain refrigerators and an automatic coal stoker, which were on the premises, but not subject to the lien of the mortgage, in return for a payment of $500.

The estimated cost of taking title, including the payment of $997.55 tax arrearages, $251 unpaid water rates, $305.34 for assessments, interest thereon and certain necessary repairs to the property, totals $3,000. One of the living co-owners has not available the necessary funds to pay her share of this expense, and the administratrix is in a like predicament. The Dime Savings Bank has, however, granted an application to loan the requisite sum on a mortgage on the property provided it be determined that the administratrix possesses authority to enter into such an arrangement.

Considerations which are pertinent in this connection have recently been considered at length in *Matter of Chapal* (269 N. Y. 464), *Matter of Pelcyger* (157 Misc. 913) and *Matter of Levine* (158 id. 116), but underlying all of the refinements and details therein discussed is the primary obligation of any estate fiduciary to conserve the assets in his charge, in which connection " he is bound to employ such prudence and such diligence in the care and management of the estate or property as in general prudent men of discretion and intelligence employ in their own like affairs." (*McCabe* v. *Fowler*, 84 N. Y. 314, 318.) The enunciations and particular

applications of this principle are so multitudinous that their particular citation would be a monumental task wholly lacking in utility in view of the universal acceptance of this general statement of the proper rule of conduct.

It is a primary principle of law as well as of ethics that no one shall be deemed obligated to pursue a specified line of conduct and simultaneously be denied the power or authority requisite for the performance of the acts inevitably involved therein.

In the case at bar, if it be granted that the interest of the decedent in the mortgage in question possessed value, it was the duty of the administratrix to conserve this asset of the estate. (*Matter of Levine,* 158 Misc. 116, 121.) Her obligation included the performance of all the acts and things which a prudent individual owner of such interest would do.

An acquisition of the securing realty for purposes of salvage of a mortgage security has been universally accepted as a proper means in the performance of the obligation of conservation resting upon executors and trustees (See authorities reviewed on pp. 927 to 932 of the *Pelcyger* opinion), and no sound distinction may be drawn between the obligations and implied authority of such fiduciaries and of an administrator. While the last named type of fiduciary is ordinarily unauthorized, except to a limited extent (*Matter of Burstein,* 153 Misc. 515, 518), to deal with realty which belonged to the decedent, this limitation is inapplicable in this connection, since realty acquired for the purpose of salvaging a personal asset retains its original nature for all purposes, and is accordingly to be deemed personalty in the hands of the administrator. (*Archer* v. *Archer,* 147 App. Div. 44, 47; *Bendan Holding Corp.* v. *Rodner,* 242 id. 233, 237.)

The question at issue, therefore, narrows itself to one of the authority of the fiduciary to secure funds from outside sources for the protection and preservation of an asset of the estate which is properly in her charge.

In *Matter of Chapal* (269 N. Y. 464), the court (at p. 471 and again on the succeeding page) intimated that a deficit in carrying charges of the property taken over for salvage purposes and also foreclosure costs are primarily to be borrowed from principal, but on final liquidation are to be returned thereto. This obviously includes not merely the actual maintenance and foreclosure expenses but the disbursements necessary for any portion of the salvage operation. Such a method of procedure would usually be preferable in cases in which there were liquid principal funds available for the purpose, but the statement is not properly construable as any indication that where no such funds exist the fiduciary is helpless

and must permit the depreciation or destruction of the particular estate asset for the preservation of which funds are required.

Obviously a borrowing from the principal funds by the fiduciary for the preservation of the asset is no less a borrowing because they are secured from an asset or fund upon which a remainderman of the same estate has a primary claim. So long as borrowing at all is authorized, the source from which the moneys are obtained is wholly immaterial (*Matter of Pelcyger*, 157 Misc. 913, 914), and a choice, where alternatives are open, is within the discretionary authority of the fiduciary, the exercise of which, like other similar powers, is reviewable by the court of his appointment.

If more than one source is available, the particular situation may incline to one rather than another (See *Matter of McKeogh*, 158 Misc. 734, 737), but where, as in the case at bar, the possibility of selective choice is absent, it is not only within the power, but it becomes the duty of the fiduciary, to avail himself of the only avenue which is open, provided the terms upon which it can be done are such as the average prudent man of discretion and intelligence would accept.

The final present question concerns the authority of the administratrix to pledge assets of the estate for the repayment of the sums borrowed for salvage purposes. The existence of such authority in an emergency which requires such act for the preservation of estate assets is unquestionable. Where money for charges is borrowed from principal, a pledge of the property taken over is effected, since " on a sale  *  *  *  the proceeds should be used first to pay the expenses of sale and the foreclosure costs." (*Matter of Chapal*, 269 N. Y. 464, 472; *Matter of Pelcyger*, 157 Misc. 913, 940.)

No sound distinction can be drawn respecting the nature of the lien which is thus capable of creation or as to whether it is perfected by one variety of act of the fiduciary or another. If the decedent had been possessed of a valuable automobile, it would obviously be the duty of the administratrix to preserve it, pending liquidation. In the process, it would unquestionably be proper for her to store it in a garage, which act would subject it to an incumbrance under section 184 of the Lien Law. An express agreement for the payment of the reasonable value of the service would not differ either in legal or practical effect from the agreement implied by law from the act.

Similar considerations apply to the situation of the present administratrix. If it were possible for her to take over property and continue its possession and management without the payment of the overdue taxes and other charges, she would in effect be imposing a daily increasing lien upon it by the legal accrual of

penalty interest. Furthermore, could she procure the making of the necessary repairs without immediate payment, she would potentially incumber it by a mechanic's lien for the work. That which may lawfully be accomplished by indirection may properly be done by affirmative act.

If the value of the asset to be preserved is commensurate with the expense of preservation, it is the duty of the administrator to conserve it, and he is fully authorized to do all those acts and things in the process and necessary for the attainment of the object which in general prudent men of discretion and intelligence would do in the conduct of their own like affairs.

As to whether the particular act here in question complies with this description, is for the fiduciary and not for the court to determine. (*Matter of Ebbets,* 139 Misc. 250, 253; *Matter of Wander,* 141 id. 584, 585, 586; *Matter of Lewis,* 142 id. 392, 393, 394.)

Enter decree on notice in conformity herewith.