In the Matter of the Estate of Antanas Valionis, Also Known as Tony Valonas and Anthony Volunas, Deceased.

Surrogate's Court, Kings County, March 26, 1941.

*Alfred J. Wentz,* for Elenora Valionis, as administratrix, etc., petitioner.

*Stephen Bredes, Jr.*, for the Consul General of Lithuania, acting for and on behalf of Lithuanian distributees, objectant.

*Frederick W. McGowan*, for the National Surety Corporation, surety on bond of administratrix.

WINGATE, S. The situation in which this estate presently finds itself is so complicated that the somewhat legalistic and uncooperative attitude of the administratrix cannot be viewed as other than unfortunate.

The distributees of the estate are six in number. Five are nationals of Lithuania and the sixth, here resident, is an adjudicated incompetent.

Its assets originally consisted of two bank accounts aggregating $7,981.38 and a bond secured by second mortgage on premises 238 Fifty-first street, Brooklyn, in the sum of $5,500, subordinate to a first mortgage of $6,500. This property is improved by a six-family tenement.

The interest on the mortgage having long remained unpaid, the administratrix instituted foreclosure proceedings and acquired the property on sale.

Almost three years have elapsed since the issuance of letters and the real property, title to which was taken in the name of the administratrix, is apparently conceded to be presently unsalable.

Although the deed to the administratrix is dated September 9, 1940, and she has apparently been collecting the rentals of the property since that time, no such sums or countervailing expenditures at least since November 1, 1940, are reflected in her account.

An application has been made on behalf of the Lithuanian nationals which seeks five several and, in part, alternate, directions, namely, *first*, that the administratrix file a supplemental account which shall detail her receipts and expenditures in respect of the real property up to date; *second*, that she convey the property to the distributees; *third*, that she continue to operate the property and make it the subject of a future accounting; *fourth*, that her present bond be discharged and a new one given covering rentals of the property for eighteen months; and *fifth*, that the deficiency claim against the mortgagor be made the subject of a future accounting.

In evaluating the propriety of the grant of the relief here sought, it will be of advantage to analyze the composite situation. It is obvious that the act of the administratrix in the acquisition of the realty was a salvage operation within the rules of *Matter of Chapal* (269 N. Y. 464), *Matter of Otis* (276 id. 101) and the many other post-depression cases which have arisen during the past few

years. This fact is not varied by the circumstance that the accountant is an administratrix and not a trustee since the obligations of both varieties of fiduciaries to take appropriate steps for the conservation of assets committed to their care are identical. (*Matter of Schmutz*, 159 Misc. 454, 456.)

Since realty acquired for the purpose of salvaging a personal asset retains its original nature for devolutionary purposes, this property must be be deemed personalty in the hands of the administratrix. (*Archer* v. *Archer*, 147 App. Div. 44, 47; *Bendan Holding Corp.* v. *Rodner*, 242 id. 233, 237; *Matter of Schmutz, supra.*) By reason of this fact its title does not vest automatically in the distributees as would have been the case had the decedent been seized therewith at the moment of his death and, for purposes of distribution, is precisely the same as if it had continued in the form of the mortgage from the ownership of which it was derived.

It is a familiar principle that in the absence of express contrary testamentary direction distribution can be made only in cash unless the distributees assent to the adoption of a diverse course of procedure. (*Villard* v. *Villard*, 219 N. Y. 482, 500; *Camp* v. *Smith*, 49 Hun, 100, 105; affd., 117 N. Y. 354; Butler, New York Surrogate Law & Practice, § 2906.) Suffice it to note that neither of these excepting conditions is here present. The decedent died intestate and there has been no indication by any of the distributees of willingness to accept in kind in the manner requ red by section 268 of the Surrogate's Court Act, which is exclusive in this connection.

It follows, therefore, since distribution of the asset in its present form is impossible, and it is incapable of immediate liquidation, that the administratrix must continue its retention until sale can be effected. During this period her obligations in respect of its care and conservation must obviously continue as before and she will be accountable for any net revenue derived from its use in a manner identical with that which would have existed were the asset in her possession the original mortgage.

The purpose of the pending accounting is to secure a judicial evaluation of the propriety of her acts in the administration of the estate up to the present time. Since complete closing of the estate is impossible by reason of the necessity for continued holding and management of the substitute for the mortgage, it can result only in an intermediate judicial settlement. It should, however, embrace all of her acts up to the approximate date of the decree, wherefore it is expedient that she should file a supplemental account disclosing her activities in respect of the salvage operation during the period of several months which have intervened since the filing of the account.

The adoption of this course is also requisite for the purpose of minimizing the future expense of the estate. The present bond of the administratrix is presumably larger than will be required for the protection of the distributees when a partial distribution is directed. It is also predicated on a situation differing from that which presently exists, since at the time of the fixation of its amount, the receipt by the administratrix of rentals from real property was not contemplated. Obviously, by analogy to the requirements of section 121 of the Surrogate's Court Act, the new bond should be in an amount which will be predicated on the reasonable value of the equity in the real property, the value, if any, of the deficiency claim against the mortgagor, the value of any other assets of the estate distribution of which is not presently to be made, and the gross rentals for eighteen months of the real property which has been acquired in attempted salvage of the mortgage. If, as appears probable, this total will permit of a bond in a penalty less than that of the one now in force, it will obviously be necessary to have the accountability of the present surety brought up to date before its obligation on the existing bond is capable of release.

It follows that the administratrix will be directed to bring her accounts up to date; that on their judicial settlement the present bond will be discharged upon her substitution of a new obligation sufficient to protect the distributees in respect of the assets which she will continue to hold for liquidation and a decree will be entered directing a partial distribution and a continued retention and management of the real property which is the subject-matter of the salvage operation, of the claim against the mortgagor and of any additional sums of money which may be deemed necessary for furnishing her with working capital, which last three items will be the subject of further accounting by her at some future time.

Proceed in conformity herewith.