In the Matter of the Will of ANTONIN CHAPAL, Deceased.

FRANCOISE N. HEPWORTH et al., Individually and as Administrators of the Estate of BLANCHE CHAPAL, Deceased, Appellants and Respondents.

CLAUDIA CHAPAL et al., Respondents and Appellants.

CHARLES H. STOLL et al., as Trustees under the Will of ANTONIN CHAPAL, Deceased, Respondents.

(Submitted November 21, 1935; decided January 14, 1936.)

*H. Wilford Leavy* for Francoise N. Hepworth et al., individually and as administrators of the estate of Blanche Chapal, deceased, appellants and respondents. The proceeds of sale of real property acquired by trustees upon the foreclosure of a mortgage in which trust funds were invested should be equitably apportioned between principal and income, in the absence of an express contrary intent. (*Meldon* v. *Devlin*, 31 App. Div. 146; 167 N. Y. 573; *Roosevelt* v. *Roosevelt*, 5 Redf. 264; *Matter of Marshall*, 43 Misc. Rep. 238; *Matter of Myers*, 161 N. Y. Supp. 1111; *Matter of Jackson*, 135 Misc. Rep. 329; 232 App. Div. 425; 258 N. Y. 281, 610; *Hagan* v. *Platt*, 48 N. J. Eq. 206; *Matter of Tuttle*, 49 N. J. Eq. 259; *Trenton Trust & Safe Deposit Co.* v. *Donnelly*, 65 N. J. Eq. 119; *Equitable Trust Co.* v. *Swoboda*, 113 N. J. Eq. 399; *Wallace* v. *Wallace*, 90 S. C. 61; *Matter of Moore*, 54 Ch. 432; *Matter of Hubbuck*, [1896] 1 Ch. 754; *Matter of Alston*, [1901] 2 Ch. 584; *Matter of Atkinson*, [1904] 2 Ch. 160; *Stewart* v. *Kingsale*, [1902] 1 Ir. 496; *Matter of Plumb*, 27 Ont. 501; *Matter of Lichtenberg*, 171 N. Y. Supp. 570; *Matter of Osborne*, 209 N. Y. 450; *Matter of Tamargo*, 220 N. Y. 225;

*Curtiss* v. *Brown*, 29 Ill. 201; *Gavin* v. *Curtin*, 171 Ill. 640; *New York St. Rys. Co.* v. *Security Trust*, 135 Misc. Rep. 456; *Furniss* v. *Cruikshank*, 230 N. Y. 495; *Lawrence* v. *Littlefield*, 215 N. Y. 561; *Spencer* v. *Spencer*, 219 N. Y. 459; *Matter of Jackson*, 258 N. Y. 281.) General expenses of accounting incurred by the trustees should be borne by the principal, and not by the income. (*Matter of Petremont*, 213 App. Div. 318; 241 N. Y. 586; *Matter of Eddy*, 207 App. Div. 162; *Matter of Scott*, 135 Misc. Rep. 661; *Matter of Marvin*, 135 Misc. Rep. 899; *Matter of Dimond*, 138 Misc. Rep. 648; *Matter of Bechtoldt*, 148 Misc. Rep. 8; *Matter of Williams*, 148 Misc. Rep. 14.)

*Edward B. Schulkind* for Claudia Chapal et al., respondents and appellants. The method of accounting directed by the Surrogate with reference to the real estate works a grave injustice to the remaindermen. (*Matter of Osborne*, 209 N. Y. 450; *Matter of Albertson*, 113 N. Y. 434; *Lockman* v. *Reilly*, 95 N. Y. 64; *Matter of Brewster*, 148 Misc. Rep. 390; *Hancox* v. *Wall*, 28 Hun, 214; *Matter of Lichtenberg*, 114 Misc. Rep. 89.) The life tenant should receive only such income as is actually produced by each parcel of real estate bought in on foreclosure, and there should be no allocation of any portion of the sale price as delayed income. The Appellate Division did not err in substituting a provision in the decree that the proceeds of the sale of any particular parcel should be added to principal. (*Trust Co.* v. *Hall*, 5 Dem. 73; *Roosevelt* v. *Roosevelt*, 5 Redf. 264; *Matter of Jackson*, 258 N. Y. 281; *Furniss* v. *Cruikshank*, 230 N. Y. 495; *Lawrence* v. *Littlefield*, 215 N. Y. 561; *Schoonmaker* v. *Van Wyck*, 31 Barb. 457.) There was no equitable conversion of the real estate held by the trustees. (*Matter of Marshall*, 136 Misc. Rep. 116.) Deficits in the operation of a parcel of real estate acquired through foreclosure of a mortgage in which estate funds had been invested should be charged to income. (*Matter of Albertson*, 113 N. Y. 434; *Matter of Rowland*, 280 N. Y. Supp. 542; *Lawrence* v. *Littlefield*, 215 N. Y. 561; *Spencer* v. *Spencer*, 219 N. Y. 459; *Furniss*

v. *Cruikshank*, 230 N. Y. 495; *Matter of Jackson*, 258
N. Y. 281; *Matter of Satterwhite*, 262 N. Y. 339; *Matter of
Brooklyn Trust Co.*, 92 Misc. Rep. 674; *Matter of Shepard*,
136 Misc. Rep. 218; *Matter of Tracy*, 179 N. Y. 501.)
Expenses incurred by the trustees for writing up and
auditing the books and accounts of the trustees should
be charged to income. (*Matter of Boyle*, 140 Misc. Rep.
523; *Matter of Ardrey*, 232 N. Y. 109; *Matter of Myers*,
161 N. Y. Supp. 1111; *Matter of Cooper*, 82 Misc. Rep.
324; *Matter of Cotheal*, 121 Misc. Rep. 665; *Matter of
Shepard*, 136 Misc. Rep. 218; *Lyons* v. *Wylde*, 260 N. Y.
634.)

*H. Wilford Leavy* and *Julius Kaplan* for Charles H.
Stoll, as trustee, respondent. The proceeds of sale of
real property acquired by trustees upon the foreclosure
of a mortgage in which trust funds were invested should
be equitably apportioned between principal and income,
in the absence of an expressed contrary intent, in the ratio
which the total principal invested and the total unpaid
interest thereon bear to each other. (*Meldon* v. *Devlin*,
31 App. Div. 146; 167 N. Y. 573; *Matter of Myers*, 161
N. Y. Supp. 1111; *Matter of Marshall*, 43 Misc. Rep. 238
*Roosevelt* v. *Roosevelt*, 5 Redf. 264; *Matter of Jackson*,
135 Misc. Rep. 329; 232 App. Div. 425; 258 N. Y. 281,
610; *Hagan* v. *Platt*, 48 N. J. Eq. 206; *Matter of Tuttle*,
49 N. J. Eq. 259; *Trenton Trust & Safe Deposit Co.* v.
*Donnelly*, 65 N. J. Eq. 119; *Equitable Trust Co.* v. *Swoboda*,
113 N. J. Eq. 399; *Wallace* v. *Wallace*, 90 S. C. 61; *Matter
of Moore*, 54 Ch. 432; *Matter of Hubbuck*, [1896] 1 Ch. 754;
*Matter of Alston*, [1901] 2 Ch. 584; *Matter of Atkinson*,
[1904] 2 Ch. 160; *Stewart* v. *Kingsale*, [1902] 1 Ir. 496;
*Matter of Plumb*, 27 Ont. 501.) An apportionment of
the proceeds of sale is required to effectuate the testa-
mentary intent. (*Lynde* v. *Lynde*, 113 App. Div. 411;
*Moseley* v. *Marshall*, 22 N. Y. 200; *Matter of Hoyt*, 160
N. Y. 607; *McLouth* v. *Hunt*, 154 N. Y. 179; *Clarke* v.
*Clarke*, 145 N. Y. 476; *Myer* v. *Cohen*, 111 N. Y. 270;

*Matter of Tracy,* 179 N. Y. 501.) Expenses incurred by the trustees in employing accountants to write up the books and accounts of investments made and of income received and distributed should be borne by principal. (*Matter of Petremont,* 213 App. Div. 318; 241 N. Y. 586; *Merritt* v. *Merritt,* 32 App. Div. 442; 161 N. Y. 634; *Schoenherr* v. *Van Meter,* 215 N. Y. 548; *Matter of Dimond,* 138 Misc. Rep. 648; *Chisolm* v. *Hamersley,* 114 App. Div. 565; *Matter of Rohr,* 145 Misc. Rep. 382; *Matter of Williams,* 148 Misc. Rep. 14.)

*Ralph Herbert Wiener* for Eric W. Hunt, as trustee, respondent. There was no equitable conversion of the real estate involved. (*Matter of Marshall,* 136 Misc. Rep. 116.)

*Otis T. Bradley, Logan Fulrath, Vermont Hatch* and *Adrian D. Stevenson* for Guaranty Trust Company of New York et al., *amici curiæ.* Where a trustee forecloses a mortgage held in trust, and acquires the mortgaged premises on foreclosure, and eventually sells the foreclosed premises, the proceeds of sale should be apportioned between the principal and income of the trust estate in the ratio which the total principal invested and the total unpaid interest thereon bear to each other. (*Meldon* v. *Devlin,* 31 App. Div. 146; 167 N. Y. 573; *Matter of Marshall,* 43 Misc. Rep. 238; *Matter of Myers,* 161 N. Y. Supp. 1111; *Matter of Jackson,* 135 Misc. Rep. 329; *Matter of Moore,* 54 Ch. 432; *Matter of Hubbuck,* [1896] 1 Ch. 754; *Matter of Alston,* [1901] 2 Ch. 584; *Matter of Atkinson,* [1904] 2 Ch. 160; *Stewart* v. *Kingsale,* [1902] 1 Ir. 496; *Matter of Plumb,* 27 Ont. 501; *Wallace* v. *Wallace,* 90 S. C. 61; *Hagan* v. *Platt,* 48 N. J. Eq. 206; *Matter of Tuttle,* 49 N. J. Eq. 259; *Trenton Trust & Safe Deposit Co.* v. *Donnelly,* 65 N. J. Eq. 119; *Equitable Trust Co.* v. *Swoboda,* 113 N. J. Eq. 399.)

*Harrison Tweed, John E. Lockwood* and *William Parsons* for The Chase National Bank of the City of New York, *amicus curiæ.* An apportionment as between principal

and income is in accordance with the primary intention of the creator of the trust. (*Lawrence* v. *Littlefield*, 215 N. Y. 561; *Spencer* v. *Spencer*, 219 N. Y. 459; *Furniss* v. *Cruikshank*, 230 N. Y. 495; *Matter of Jackson*, 258 N. Y. 281; *Matter of Satterwhite*, 262 N. Y. 339.) The real estate is security for both principal and income. (*Matter of Atkinson*, [1904] 2 Ch. 160.) An apportionment should be made. (*Meldon* v. *Devlin*, 31 App. Div. 146; 167 N. Y. 573; *Matter of Marshall*, 43 Misc. Rep. 238; *Matter of Myers*, 161 N. Y. Supp. 1111; *Matter of Jackson*, 135 Misc. Rep. 329; *Roosevelt* v. *Roosevelt*, 5 Redf. 264; *Matter of Moore*, 54 Ch. 432; *Matter of Alston*, [1901] 2 Ch. 584; *Matter of Atkinson*, [1904] 2 Ch. 160; *Matter of Barker*, [1897] W. N. 154; *Lyon* v. *Mitchell*, [1899] W. N. 27; *Matter of Ancketill*, 27 L. R. Ir. 331; *Stewart* v. *Kingsale*, [1902] 1 Ir. 496; *Hagan* v. *Platt*, 48 N. J. Eq. 206; *Matter of Tuttle*, 49 N. J. Eq. 259; *Equitable Trust Co.* v. *Swoboda*, 113 N. J. Eq. 399.)

LOUGHRAN, J. This proceeding was brought for the construction of a will and for the instruction of trustees respecting their administration of parts of a testamentary trust estate.

Antonin Chapal, who died in July, 1928, divided his residuary estate into two equal parts which he devised and bequeathed to his executors in trust with directions in substance as follows: (1) To pay the income of one part to his wife, Blanche Chapal, during her life, and on her death to distribute three-fourths of the principal thereof to his daughter, Francoise, and one-fourth to his stepson, Robert Irving Chapal. (2) To pay the income of the other part to the testator's daughter, Francoise, during her life; on her death to distribute the principal thereof to her surviving issue *per stirpes;* and, in default of such issue, to distribute three-fourths of the principal to the testator's " heirs at law " and one-fourth to his stepson.

No question arises in respect of the trust for the life of the testator's wife. On her death in 1931, that trust ended and the principal thereof vested accordingly.

What follows has reference only to the respective positions of the parties in interest under the trust for the life of the testator's daughter (now Francoise Naylor Hepworth).

The Surrogate ruled that the provision for the " heirs at law " of the testator was " a gift to that class which should constitute his heirs at law if he had lived until the death of his daughter and died intestate immediately thereafter." All parties accept that construction. The class so defined will be called for convenience the heirs presumptive of the testator.

It appears that the appraised value of the trust was $598,641.28. Except for real estate carried at $35,750, the assets were personal property, including mortgages in which the trustees had invested pursuant to authority conferred by the will. From 1930 to 1933, inclusive, the average annual earned income was roughly $17,000. In 1934 income was substantially reduced, because through the foreclosure of mortgages the trustees acquired real estate which in part only has been productive. The trustees sought the directions of the Surrogate as to how in such a situation the balance was to be held even between opposing interests.

Instructions given were as follows: " The trustees shall set up separate accounts in their books for each separate parcel acquired as aforesaid, and such separate accounts shall be kept until such particular parcel is sold. If the income of a particular parcel is insufficient to pay the carrying charges thereof, the trustees are hereby directed to pay the deficiency from the principal of the trust estate and not from the income thereof. If the income of a particular parcel is more than sufficient to pay the carrying charges thereof, the trustees are hereby directed to exercise their own discretion and judgment with respect to distributing such surplus income entirely or to retaining the same or some part thereof to meet possible subsequent deficiencies. If such surplus exists in the case of a particular parcel as to which the trustees

have theretofore taken or applied funds from the principal of the trust estate to pay deficiencies of income, the trustees are directed to reimburse the principal of the trust estate from such surplus income. Upon the sale of any particular parcel the trustees are directed to properly allocate as between principal and income the proceeds of such sale."

Upon appeal by the heirs presumptive of the testator to the Appellate Division, that court in its opinion said that the carrying charges should be paid out of income (245 App. Div. 818, 819) but in its order left the contrary direction of the Surrogate undisturbed, and thereby modified the decree only " by eliminating the provision that ' upon the sale of any particular parcel the trustees are directed to properly allocate as between principal and income the proceeds of such sale ' and substituting therefor a provision that the proceeds shall be added to principal." From that modification of the decree, Francoise Naylor Hepworth (the life tenant) and Robert Irving Chapal, individually and as temporary administrators of Blanche Chapal, deceased, appeal to this court.

We are in accord with the courts below in their treatment as separate units of properties acquired by the trustees through foreclosure. This method conforms to the procedure followed in *Furniss* v. *Cruikshank* (230 N. Y. 495, 509.) Practical good sense dictates its adoption here. No two parcels taken over by the trustees will be brought in on the same basis. Ordinary experience does not justify the expectation that any two can be sold under similar conditions.

The order of the Appellate Division follows the decree of the Surrogate as to the proper source of carrying charges pending a sale. A difference of view in respect of that subject is reflected only in the opinion of the higher court. Its dictum may be disregarded. If each parcel is to be managed separately, a deficit of carrying charges must be advanced out of principal.

It was decreed by the Surrogate that the proceeds of a sale should be allocated between principal and income. It was ordered by the Appellate Division that the sale proceeds should be returned to the capital account in every instance. Here, we think, the Surrogate was right and that the modification of his decree by the Appellate Division was unwarranted.

No rule of apportionment has been stated. Doubtless the Surrogate thought it expedient to await the event of a liquidation with loss to both principal and income, a resulting profit not having been supposed. His opinion tells us, however, that he may make an allocation in accordance with the rule applied by us in *Furniss* v. *Cruikshank* (*supra*), and this state of the record persuades us to suggest that it is unnecessary to rely upon the analogy of that and like cases. There the court was dealing with property that had been unproductive in the ownership of the testator. In the opinion it was said: "Authorities are of little help. The construction of every will depends upon the varying language used and the varying conditions surrounding the testator " (p. 505). After discussion of the background against which the will was to be interpreted, it was held that an equitable conversion was effected as of one year after the trust was set up. We have now another problem — that of the liquidation of real estate acquired of necessity because of default on a mortgage investment.

In such an investment situation what is involved is the salvage of a security. The security it is to be remembered is a security not for principal alone but for income as well. On a sale, therefore, the proceeds should be used first to pay the expenses of the sale and the foreclosure costs and next to reimburse the capital account for any advances of capital for carrying charges not theretofore reimbursed out of income from the property. Then the balance is to be apportioned between principal and income in the proportion fixed by the respective

amounts thereof represented by the net sale proceeds. In the capital account will be the original mortgage investment. In the income account will be unpaid interest accrued to the date of sale upon the original capital. The ratio established by these respective totals determines the respective interests in the net proceeds of a sale. Since that matter has not been argued before us, we do not fix the rate at which interest is to be computed.

This method of apportionment for cases of the present type is not novel. Its essential principle was recognized and applied in *Meldon* v. *Devlin* (31 App. Div. 146; 167 N. Y. 573). (See also, *Matter of Marshall*, 43 Misc. Rep. 238.) Of course, that method may not be used when a will or trust indenture prescribes a valid contrary course. That is not the case here.

A cross-appeal is taken by the heirs presumptive of the testator " from that part of the order of the Appellate Division * * * which affirmed that part of the decree of the Surrogate's Court * * * providing and directing that the reasonable expenses incurred by the trustees in the employment of accountants for the purpose of writing up and auditing their books and accounts shall be paid from the principal of the trust funds." We see no reason why the principal of the trust should pay for services which can in fact fairly be related only to income. The decree should be modified so as to direct an apportionment accordingly of the expenses in question.

The order of the Appellate Division should be reversed and the decree of the Surrogate modified in accordance with this opinion and, as so modified affirmed, without costs.

CRANE, Ch. J., LEHMAN, HUBBS, CROUCH and FINCH, JJ., concur; O'BRIEN, J., not sitting.

Ordered accordingly.