ROBERT W. JOHNSTON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

T. ALICE KLAGES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 107303, 107344. Promulgated December 10, 1942.

George A. Reiss, Esq., for the petitioners.
Z. N. Diamond, Esq., for the respondent.

234

OPINION.

BLACK, *Judge:* These proceedings involve three questions. The principal question is whether, for the taxable year 1937, there should be included in computing the net income of petitioners under section 162 (b)[1] or 22 (a)[2] of the Revenue Act of 1936, the amounts of

---

[1] SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

&ast; &ast; &ast; &ast; &ast;

(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, &ast; &ast; &ast; but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. &ast; &ast; &ast;

[2] SEC. 22. GROSS INCOME.

(a) GENERAL DEFINITION.—"Gross income" includes gains, profits and income derived

$57,636.26 and $57,637.11, respectively, representing that portion of the proceeds (cash and bond and mortgage), from the sale of trust property apportioned under New York law by the trustees to petitioners as life income beneficiaries of trusts which were created in 1921 by the mother of petitioners, which trusts were to be in all respects governed by the laws of the State of New York. The second question is whether there should also be included in computing the net income of each petitioner the amount of $1,215.47, representing trust income (net) from the operation of the real estate for the period January 1 to January 11, 1937. The third question is whether petitioners, who are nonresident alien individuals, are subject to tax at the rates imposed by sections 11 and 12 of the Revenue Act of 1936 in accordance with the provisions of section 211 thereof as amended by section 501 of the Revenue Act of 1937. The answer to the third question depends upon whether the aggregate amount received during the taxable year by each petitioner from the sources specified in section 211 (a) is more than $21,600, and this will in turn depend upon our solution of the first two questions.

1. The portion of the proceeds from the sale of trust property apportioned under New York law by the trustees to petitioners is, as set out in paragraph 15 of our findings, made up of the following:

|  | Johnston | Klages |
| --- | --- | --- |
| Portion of cash proceeds | $9,530.78 | $9,531.63 |
| Portion of bond proceeds | 48,105.48 | 48,105.48 |
| Total | 57,636.26 | 57,637.11 |

Petitioners contend that, because the trustees sold the trust property at a loss, any apportionment of the proceeds of the sale to petitioners would be an apportionment of principal or corpus to petitioners and as such would constitute gifts to them from their mother, the creator of the trusts, exempt from taxation under section 22 (b) (3) of the Revenue Act of 1936,[3] citing in support thereof *Burnet* v. *Whitehouse*, 283 U. S. 148, and *Helvering* v. *Butterworth*, 290 U. S. 365.

The respondent contends that under the so-called *Chapal-Otis* rule of New York as expressed in *In re Chapal's Will*, 269 N. Y. 464; 199

from salaries, wages or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *

[3](b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this title:

* * * * * *

(3) GIFTS, BEQUESTS, AND DEVISES.—The value of property acquired by gift, bequest, devise, or inheritance (but the income from such property shall be included in gross income).

N. E. 762, and *In re Otis' Will*, 276 N. Y. 101; 11 N. E. (2d) 556, the amount of the proceeds apportioned to petitioners under this rule must, as far as petitioners, the life income beneficiaries, are concerned, be considered as "income" received by them, since under the instrument creating the trusts petitioners were only entitled to receive "income" and nothing else.

In the *Chapal* case, *supra*, the basic situation here involved was presented. Chapal died in 1928. He divided his residuary estate into two equal parts which he devised in trust, with instructions to the trustees to pay the income of one part to his wife for life and to pay the income of the other part to his daughter for life and at her death to distribute the principal to her surviving issue. The trust for the daughter was the only disposition involved in the case. With the exception of certain real estate, the assets of the trust consisted of personal property, including mortgages. In 1934 foreclosure of certain mortgages was effected and the trustees acquired the securing real estate. The trustees thereupon sought the surrogate's directions as to the procedure from then on with respect to the opposing interests of life tenant and remainderman. The appeal before the Court of Appeals was from the order of the appellate division affirming the surrogate's decree construing the will and instructing the testamentary trustees with respect to the disposition of the acquired real estate and the income therefrom. The Court of Appeals, in reversing the order of the appellate division and in modifying the decree of the surrogate, among other things, said:

> In such an investment situation what is involved is the salvage of a security. The security it is to be remembered is a security not for principal alone but for income as well. On a sale, therefore, the proceeds should be used first to pay the expenses of the sale and the foreclosure costs, and next to reimburse the capital account for any advances of capital for carrying charges not theretofore reimbursed out of income from the property. Then the balance is to be apportioned between principal and income in the proportion fixed by the respective amounts thereof represented by the net sale proceeds. In the capital account will be the original mortgage investment. In the income account will be unpaid interest accrued to the date of sale upon the original capital. The ratio established by these respective totals determines the respective interests in the net proceeds of a sale. Since that matter has not been argued before us, we do not fix the rate at which interest is to be computed.

The *Otis* decision concluded the interest question which the *Chapal* decision had left open, holding that interest was to be computed at the mortgage rate for the whole period, as opposed to the rate which generally prevailed for legal investments during that period.

In the instant proceedings the trustees have followed exactly the rule laid down by the *Chapal* and *Otis* decisions. On the sale of the property in question for $550,000 the proceeds were used first to pay the expenses of the sale and the foreclosure costs, and next to reim-

burse the capital account for any advances of capital for carrying charges not theretofore reimbursed out of income from the property, and then the balance was apportioned and allocated on the books of the trusts as set out in paragraphs 14 to 18, inclusive, of our findings. The question we have to decide is whether the amounts apportioned to the trust for each petitioner, or any part thereof, should be included in computing the net income of the life income beneficiaries for the taxable year 1937 under either the above mentioned sections 162 (b) or 22 (a) of the Revenue Act of 1936.

Section 162 (footnote 1, *supra*) defines net income of a trust. Paragraph (b) of that section provides that there shall be allowed as a deduction to the trust the amount of the income of the trust for the taxable year which is to be distributed currently by the fiduciary to the beneficiaries. The same section further provides: "but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not." It is the contention of petitioners that before any amount is to be included in computing the net income of the beneficiaries it must first be (1) income of the trust for the taxable year, (2) which is to be distributed currently by the fiduciary to the beneficiaries, and (3) is therefore allowed as a deduction in computing the net income of the trust.

It is the further position of petitioners that the two trusts, of which they were the income beneficiaries, had no income from the transactions in question, but on the contrary had losses; that any distributions which were made to the petitioners as beneficiaries were of principal of the trusts and not income, and therefore such amounts as the petitioners received were not taxable income to them under section 162 (b). We do not think petitioners can be sustained in their contention that they are not taxable on the amounts in question.

As we understand the situation, it is substantially this: Under the two New York decisions which we have cited, when the trustees sold the real estate in question they were engaged in salvaging a security. It was first their duty to reimburse the principal of the trust estates for the expenses of foreclosure costs, carrying charges, and items of that sort. This has been done and there is no controversy on that point. The remainder of the proceeds of the sale was to be treated as if a certain part of interest had been collected and a certain part of the principal had been collected. These proportions are set forth in our findings of fact and need not be repeated here. Although in reality there was no interest collected by the trusts and the amounts represented thereby did not represent taxable income to the trusts, nevertheless, under New York law, these amounts stood in lieu of interest and had to be passed on to petitioners, who were the income beneficiaries of the trusts. What was distributable to them was in lieu

of interest and we think that which stands in lieu of interest must be taxed as interest.

In *Theodore R. Plunkett*, 41 B. T. A., 700; affd., 118 Fed. (2d) 644, a question somewhat similar to the one here presented was decided in favor of the Commissioner. In that case the petitioner was a life income beneficiary of a testamentary trust subject to the laws of the Commonwealth of Massachusetts. The trust originally consisted, besides other property, of certain shares of stock in two corporations. Under the terms of the trust the trustee, with certain specified exceptions, was directed to keep the stock as a permanent investment. In violation of its trust, the trustee in 1929 exchanged these shares for shares of stock in another corporation. The petitioner objected to the exchange and in 1933 the probate court having jurisdiction under the testator's will ordered the trustee to substitute $547,500 in cash for the stock received in exchange. The trustee appealed to the Supreme Judicial Court of Massachusetts. Later this appeal was withdrawn and an agreement was filed with the court whereby the trustee substituted $500,000 in cash for the stock received in exchange and then resigned as trustee. A new trustee was appointed, and on October 9, 1934, the petitioner filed a petition with the probate court and prayed the court to authorize the new trustee to withdraw from the $500,000 an amount which would have accrued as income had the trust property been properly invested, and to allocate the amount so withdrawn to income in order that it might be paid forthwith to the petitioner as the life tenant of the trust fund. On the same day the court found the allegations of the petitioner to be true and ordered the new trustee "to allocate the sum of seventy thousand (70,000) dollars to income from principal of said fund, and to pay said seventy thousand (70,000) dollars forthwith to said Theodore R. Plunkett." The taxpayer, in his proceeding before the Board of Tax Appeals, contended that the $70,000 received by him constituted a bequest under the interpretation of his father's will and that it was exempt from income tax under section 22 (b) (3) of the Revenue Act of 1934 (identical with section 22 (b) (3) of the Revenue Act of 1936), citing *Burnet* v. *Whitehouse, supra,* and other similar cases. The Board held that the statute and cases cited had no application and that the effect of the court's decree was to make the $70,000, notwithstanding it was part of the principal of the trust, distributable income of the trust for 1934. In affirming the decision of the Board the First Circuit, among other things, said:

* * * The $70,000 was distributed by the trustee to the petitioner as income and was properly included in computing his net income as provided in section 162 (b), [4] supra.

[4] Section 162 (b) of the Revenue Act of 1934 is identical with section 162 (b) of the Revenue Act of 1936.

As already set forth, by the terms of the will the petitioner's interest was limited to income from the trust estate. The $70,000 was paid to him as income, the income from the bequest of the trust property which the testator had left to the trustee. To that extent only was he a beneficiary, and the money was paid to him pursuant to the terms of the will as income from the trust. Clearly the payment was not a bequest, devise or inheritance * * *.

We think the principle of law decided in the *Plunkett* case is the same as is involved in the instant proceedings. Petitioners contend, however, that the *Plunkett* case is in no way controlling upon, or analogous to, the cases at bar, for the reason that the trust in that case realized a capital gain upon the receipt of the $500,000, whereas in the instant proceedings the trust property which was sold for $550,000 was sold at a loss. In other words, it is the petitioners' position that before a life income beneficiary can be charged with currently distributable income under section 162 (b), *supra*, the actual existence of "income" to the trust must always appear as an affirmative factor. It is true that in the *Plunkett* case it appears that the respondent determined that the trust had a capital gain of $54,798.99 and a taxable net income of $16,439.70, but neither the Board nor the First Circuit made its respective decision turn upon that fact. Under the laws of Massachusetts whatever gains the trust received from a conversion of the corpus of the trust became immediately a part of the principal of the trust and as such did not represent distributable income to the beneficiary. Both the Board and the First Circuit recognized in the *Plunkett* case that under the laws of Massachusetts the entire $500,000 was principal just as the $550,000 in the instant proceedings would be principal except for the rule of apportionment to which we have heretofore alluded. The basis for the decision in the *Plunkett* case was that, since under the law of Massachusetts $70,000 of the principal should be allocated to income, and since income was all that the life tenant was entitled to receive, the amount received by him was income and properly included in computing his net income as provided in section 162 (b).

The trusts in the instant proceedings are governed by the laws of the State of New York. The trustees determined that under the New York law there should be allocated to each petitioner 21.380213 percent of the cash proceeds received by each trust and also 21.380213 percent of an undivided one-half interest in the $450,000 bond and mortgage, or $48,105.48. It was stipulated that the fair market value of the bond and mortgage was $450,000, or par. Although no part of the bond and mortgage nor any interest therein has at any time been transferred or assigned by the trustees to either of the petitioners (see paragraph 20 of our findings), it would seem that from and after the date of sale on January 11, 1937, each petitioner was the equitable owner of property rights in the bond and

mortgage which had a fair market value of $48,105.48. It was a right which either one could have sold or given away. It is true that it may have been impracticable for the trustees to have divided the bond and mortgage and to have distributed to petitioners their part within the taxable year, but nevertheless we think petitioners' proportional part of the bond and mortgage represented distributable income to them in that year. Cf. *Estate of Austin C. Brant*, 44 B. T. A. 1306. In that case, among other things, the Board said:

We conclude that the net income of the Whiting estate trust was currently distributable by the fiduciary to the beneficiaries within the meaning of section 162 (b), *supra*, and pursuant to that section the fiduciary is entitled to a deduction of the amount of the net income realized by the trust from the acquisition of the new building in 1934. The fact that such income was not severable from the land owned by the trust did not prevent its recognition as taxable gain and likewise its inseparability for purposes of distribution is immaterial, for, under section 162 (b), *supra*, the deduction is to be allowed whether the income is distributed or not.

While in the instant case the trusts, as such, had no income from the sale of the property, whereas in the *Brant* case there was income resulting from acquisition of the new building, nevertheless, we think, the principle of the *Brant* case is applicable because, as we have held above, the proportions of the cash and bond and mortgage which were allocated to petitioners under the laws of the State of New York upon the sale of the property were distributable income to them and not an allocation of part of the principal or corpus of the trusts.

If the trusts here were discretionary trusts such as are covered by section 162 (c) of the Revenue Act of 1936, then petitioners' proportion of the bond and mortgage would not be taxable to them in 1937, except as to the 21.380213 percent of the $7,500 or $1,603.50 which was paid or credited to each petitioner in 1937 from cash collections by the trustees on the bond and mortgage. But the trusts here are not discretionary trusts. Both sides seem to be in agreement that the trusts involved are those where the income is currently distributable and are covered by section 162 (b).

If we are wrong in holding that section 162, particularly subparagraph (b) thereof, is applicable to these proceedings, we think petitioners would be taxable on the cash amounts in question under section 22 (a). Among the numerous items which go into income under that section is income derived from interest. While, as we have already said, the amounts which were distributable to petitioners were not in fact interest, nevertheless, they were in lieu of interest and we see no reason why they would not be taxed as such. On this issue we sustain respondent.

2. We shall now consider the second question. During the period January 1 to January 11, 1937, each trust earned a net income of $1,215.47 from the operation of the real estate which was sold on

January 11, 1937. Under the *Chapal-Otis* rule, the trustees were required to apply such net income to the reimbursement of the principal account of each trust for its share of the advances previously made therefrom for the foreclosure expenses and carrying charges. *In re Chapal's Will, supra; In re Otis' Estate*, 158 Misc. 808, 816; 287 N. Y. S. 758, 766. The state law is controlling as to what is or is not currently distributable income under the trust instrument. *Freuler v. Helvering*, 291 U. S. 35. Since under the law of the State of New York the net income of the trusts from the operation of the real estate prior to its sale in 1937 was not income currently distributable to petitioners, it should not be included in computing the net income of petitioners under section 162 (b), *supra*. We, therefore, decide the second question for the petitioners. Cf. *Estate of Sallie Houston Henry*, 47 B. T. A. 843.

3. The third question must be decided in favor of the respondent. In view of our holdings on the first two questions, the gross income of each petitioner for the taxable year from, the sources specified in section 211 (a) of the Revenue Act of 1936 was more than $21,600. It follows that petitioners are taxable as provided in subsection (c) of section 211 of the Revenue Act of 1936, which subsection was added by section 501 (b) of the Revenue Act of 1937.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

MURDOCK, *P. J.*, dissenting: I dissent from the majority opinion in so far as it holds that these life beneficiaries had income within the meaning of section 162 (b). The primary purpose of that section was to define net income of a trust, which in general is the same as that of an individual but with some additional deductions. Paragraph (b) allows as a deduction to the trust the amount of the *income of the trust* for the taxable year which is to be distributed currently by the fiduciary to the beneficiaries. It further provides that the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries, the thought being that, if the trust is allowed to deduct distributable income, then the beneficiaries should be required to report it. Thus, this particular section requires the beneficiaries to include an amount in their income only if the amount is first income of the trust for the taxable year and allowable as a deduction in computing the income of the trust. The revenue act has its own test of what is income to the trust. This trust had no net income from the disposition of this property and no net income within the meaning of section 162 (b). It was not entitled to any deduction under that

section. Under such circumstances, no amount is to be included in the net income of the beneficiaries under that particular section.

The New York cases establish an equitable rule for the purpose of making a fair division between life tenant and remaindermen, in accordance with the intent of the testator or grantor. The decisions cited recognize that the allocation to income of a part of the amount realized from the sale is a pure fiction. The rule, appropriate enough in its place, is in nowise adopted by the revenue act as determinative of what is or is not income under section 162 (b). The above reasoning, based upon a close and literal application of section 162 (b), was not considered in the *Plunkett* case, and that case should not be followed here in making an improper application of section 162 (b).

OPPER, *J.*, dissenting in part: I agree that petitioners received income to the extent of the cash distributed in the tax year and that they are taxable on it under both sections 162 and 22. But it seems to me highly questionable that the unliquidated share in the mortgage was "currently distributable" under 162 or constructively received under 22.

Income was to be distributed semiannually, pursuant to the trust instrument, only to the extent that the trustees found it "practical and convenient." The parties have stipulated that no part of the mortgage allocated to income was "paid or credited to either petitioner," except for an installment received, and distributed, in cash. It is easy to understand why the trustees did not find it either practical or convenient to distribute the balance, but I have difficulty in ascertaining that the trust instrument made income "currently distributable" if they did not. Whether this also follows where the trustees insist that the distribution can and should take place, as in *Estate of Austin C. Brant*, 44 B. T. A. 1306, need not be disposed of here.

In *Theodore R. Plunkett*, which the Court follows, the Massachusetts decree had ordered a distribution "forthwith," and this was made in cash, most of it immediately. No one could say that this was not a current distribution. That is what I conceive to be the distinction from the present facts.

This reasoning would, of course, require an opposite conclusion on the last point.

SMITH, *J.*, agrees with this dissent.

MURDOCK, *J.*, I agree with the dissent except for the first sentence thereof.