ESTATE OF RÖBERT L. DULA, DECEASED, GLORIA M. PACKARD POLT, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 43662. Filed January 18, 1955.

*Jac M. Wolff, Esq.*, for the petitioner.
*William G. O'Neill, Esq.*, for the respondent.

648

OPINION.

TIETJENS, *Judge:* This case presents the often troublesome question of the proper year in which income is to be taxed.

Decedent was the life beneficiary of a trust and entitled to the net income therefrom. Part of the assets of the trust consisted of interests in bonds and mortgages on two pieces of real estate on which the mortgagors defaulted. The trustee foreclosed and took title, on the 45th Street property in 1934 and on the Gansevoort property in 1938. Thereafter, the trustee engaged in mortgage-salvage operations with respect of the properties and finally sold them in April 1945 and November 1944, respectively. On their sale the trustee received as consideration partly cash and also bonds and mortgages. In 1945 the trustee computed the proportionate share of the proceeds of the sales of the properties to be allocated to the decedent as the life beneficiary and the share to be allocated to the principal of the trust. The cash share was paid to decedent in 1945 and in May of that year the trustee made an allocation in its records showing the share of the decedent as income beneficiary in the bonds and mortgages.

No controversy apparently exists over the cash share paid to decedent in 1945.

Petitioner also concedes that the proportionate share in the mortgage-salvage proceeds represented by the bonds and mortgages allo-

cated to the decedent, constituted taxable income, and well this concession might be made in view of *Plunkett* v. *Commissioner*, (C. A. 1) 118 F. 2d 644, affirming 41 B. T. A. 700, and *Johnston* v. *Helvering*, C. A. 2) 141 F. 2d 208, affirming 1 T. C. 228.

The brunt of petitioner's argument is directed to the contention that respondent improperly determined that the income was taxable to decedent for the period January 1, 1945, to November 15, 1945 (the date of his death). Petitioner's contention is that until entry of the decree of the Surrogate's Court in 1947 neither the decedent nor his estate had any present right to receive the income; that the "allocation" made by the trustee in 1945 was nothing more than a computation or rough approximation of the share to which decedent was entitled as income which gave him no present enforcible right; and other arguments of like import.

Respondent, on the other hand, supports his determination by relying on section 162 (b), Internal Revenue Code of 1939. That section allows as a deduction to the trustee the net income of the trust which "is to be distributed currently," but taxes to the beneficiary the amount allowed as a deduction to the trustee "whether distributed * * * or not."

Under the terms of the trust before us we have no doubt that the net income thereof was to be distributed currently to the decedent and that the trustee was under a duty to make periodic distributions. Petitioner argues that since the income in question consisted of undivided interests in bonds and mortgages it was not the kind of income which the testator meant to be distributed currently. We find no merit in this contention. Cf. *De Brabant* v. *Commissioner*, (C. A. 2) 90 F. 2d 433, affirming 34 B. T. A. 951. This case is distinguishable from *Commissioner* v. *First Trust & Deposit Co.*, 118 F. 2d 449 (41 B. T. A. 112) cited by petitioner, where the Court held the situation to be comparable to an estate in the course of administration and the trustee to be under no duty to make periodic distributions.

The case before us is not unlike *Robert W. Johnston*, 1 T. C. 228, cited above, as affirmed in 141 F. 2d 208. The *Johnston* case was concerned with the life beneficiaries of trusts engaged in mortgage-salvage operations. The trustees foreclosed the mortgage and later bought in the property which they sold in 1937. The laws of New York, which governed, required the trustees to allocate to the petitioners a certain portion of the proceeds of the sale, which they did in 1937. The proceeds there, as here, consisted of cash and a purchase money bond and mortgage. No part of the bond and mortgage was transferred in 1937 to the petitioners nor was any certificate of interest or participation therein given them. We held that petitioners were

taxable in 1937 on their proportionate share of the bond and mortgage. In doing so, this Court pointed out, at page 240:

Although no part of the bond and mortgage nor any interest therein has at any time been transferred or assigned by the trustees to either of the petitioners (see paragraph 20 of our findings), it would seem that from and after the date of sale on January 11, 1937, each petitioner was the equitable owner of property rights in the bond and mortgage which had a fair market value of $48,105.48. It was a right which either one could have sold or given away. It is true that it may have been impracticable for the trustees to have divided the bond and mortgage and to have distributed to petitioners their part within the taxable year, but nevertheless we think petitioners' proportional part of the bond and mortgage represented distributable income to them in that year.

Petitioner seeks to distinguish the *Johnston* case on the ground that it did not involve the question of the year of taxability, but only the question as to whether the allocated portion of the bond and mortgage constituted income at all. We think both questions were presented and decided by this Court in the *Johnston* case and we are unable to distinguish it on that basis.

Petitioner makes the further contention, that the present case is different because here the question of the proper allocation to decedent was presented to the Surrogate's Court and until the final decree of that court neither the decedent nor his estate had any right in the mortgages and bonds. With this we do not agree. The only reason, so far as we can see, that the Surrogate's Court was resorted to was that the life beneficiary died, the trust was thereby terminated, and it became necessary to file a final accounting. We do not think this fact affects the tax consequences of the transactions with respect to the mortgage-salvage operations which took place before the beneficiary's death. At most this might have had the effect of postponing actual distribution of the interests in the bonds and mortgages, but as demonstrated by the quotation above from the *Johnston* case, actual distribution is not the "taxable event" in situations of this character. As we said in *Mary Clark de Brabant*, 34 B. T. A. 951, affd. (C. A. 2) 90 F. 2d 433, at page 955:

It is that right of petitioner, beneficiary, to receive the contested income then, not her actual or constructive receipt of such income during that year, which fixes her liability for the tax thereon, as income "currently distributable" during that year, under sections 161 (a) (2) and 162 (b), *supra*. The possession of that right to receive income, not its actual or constructive receipt, is the test of petitioner's liability here.

The instant case is, if anything, stronger for respondent than *Robert W. Johnston, supra*. In the *Johnston* case we held that the proportions to be allocated as between the life beneficiaries and the principal of the trust was governed by the so-called "Chapal-Otis rule," a rule embodied in court decisions. This rule, as applicable to the present case, has been modified by statute—section 17–c Personal Prop-

erty Law of New York, 1940.  Subparagraph 2 (d) of that section expressly declares:

(d) The purpose of the enactment of this subdivision is declared to be the simplification of the rules of procedure in mortgage salvage operations and the elimination of present complications which work to the disadvantage of the life tenant, who is usually the principal object of the testator's or settlor's bounty, by depriving him of a fixed right to the actual payment of any net income earned by the property.  Such fixed right is granted in lieu of the discretion now given to the trustee to pay net income or any part thereof to the life tenant. *The general rules of the apportionment of the proceeds of sale between life tenant and remainderman are retained subject to the express modifications made herein.* * * * [Emphasis supplied.]

Also in the report of the commission set up to consider this problem the following appears:

(a) The Chapal-Otis rule authorizes the trustee to pay surplus net income in his discretion.  Trustees have hesitated to pay such net income because in the case of overpayment to the life tenant, the trustee might be surcharged with that amount.  The life tenant of the trust must wait in the majority of cases for a long period of time before he becomes entitled to the payment of any income, because of the present requirement that advances from principal for the expenses of foreclosure and for arrears of taxes and other liens must first be paid from the net income of the property.  The amendment provides for the immediate payment of income to the life tenant beginning with the date of the acquisition of the property by the trustee by foreclosure or conveyance in lieu of foreclosure.  Under the new provisions net income up to three per centum of the face amount of the mortgage is so payable. * * * [40 McKinney's Consolidated Laws of New York (Annotated), Personal Property Law, p. 173.]

Thus the right of decedent to receive the contested income is expressly conferred by statute.  It needs no court action to confirm it.

We point out that this case is only concerned with *when* the *apportioned part of the proceeds of sale* became income taxable to the life beneficiary.  This is done for the reason that section 17-c, 2 (a), of the Personal Property Law referred to above confers on the life beneficiary the right to payments of 3 per cent on the principal amount of the mortgage *during* the salvage operation and, further, that the amount of such payments "shall be taken into account, however, in the apportionment of the proceeds of sale and shall be charged against the share of the life tenant."  We are unable to ascertain whether the apportionment of the proceeds with which we are concerned reflects the charge referred to in the statute.  However, neither party has referred to the 3 per cent statutory payments in their arguments or complained that the apportionment was improper, and for the purposes of this case we assume that the apportionment was properly computed and that the statutory charge was made against the life beneficiary's share by the trustee in determining the amounts here involved.

Petitioner also contends that the apportioned proceeds of the sale of the mortgaged property should have been taxed allocably over the years prior to 1945 during which the mortgage-salvage operation was carried on, because the proceeds of that operation really represented income of which the life beneficiary was deprived during those years. The answer to this argument is that during those years the decedent received none of the proceeds from the sale of the mortgaged properties with which we are here concerned and had no right to receive any. His right to his share of the sale proceeds matured in the years when the sales of the properties were made by the trustee and he thereupon became entitled to the allocation as provided by the New York laws.

Applying the principles of the *Johnston* case, we hold that income with respect to the Gansevoort property was taxable to decedent in 1944 when the sale of that property was made by the trustee. This income, therefore, was not taxable to decedent in his last taxable period. On the other hand, the income with respect to the 45th Street property, which the trustee sold in 1945, was properly taxable to decedent in his last taxable period as determined by respondent.

Finally, petitioner contends that, in any event, respondent is estopped from making the determination in question because he accepted amended returns on behalf of decedent in which the income here involved was allocated over the years 1933 to 1944, and in some instances demanded and received interest on the amounts of tax shown in such returns. We find none of the elements of estoppel in these facts. The amended returns were voluntarily filed. No representations as to their effect were made by respondent and he did nothing to induce such action on behalf of decedent.

*Decision will be entered under Rule 50.*