Gloria M. Packard POLT, Executrix, Estate of Robert L. Dula, Deceased, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 227, Docket 23773.

United States Court of Appeals
Second Circuit.

Argued April 9, 1956.

Decided May 25, 1956.

894

Jac M. Wolff, New York City, for petitioner.

Joseph F. Goetten, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., and Lee A. Jackson and A. F. Prescott, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before CLARK, Chief Judge, and HINCKS and LUMBARD, Circuit Judges.

CLARK, Chief Judge.

This is a petition for review of a decision by Judge Tietjens of the Tax Court of the United States, 23 T.C. 646, holding that the proportionate share of certain mortgage-salvage proceeds represented by bonds and mortgages allocated by a trustee in 1945 to the beneficiary of a trust was taxable to the beneficiary at that time, and not later in 1947, after the beneficiary's death and the entry of a Surrogate's decree settling the trustee's account and ordering distribution of the proceeds. We shall proceed to summarize the facts of the transaction now in issue, which are set forth in greater detail in the opinion of the Tax Court.

The father of decedent Robert L. Dula died in 1926, having created testamentary trusts for his children. In the case of the trust created for decedent, the testator directed that the income be payable to him during his lifetime, with principal and "unexpended income" distributable to his issue. In 1929, the trust for decedent became the owner of an undivided interest in a bond and mortgage on property known as the 45th Street property; and sometime later the trust also acquired an interest in a bond and mortgage on property called the Gansevoort property, both properties being located in New York City. In 1933 the mortgagor of the 45th Street property defaulted, and in 1934 the trustee foreclosed the mortgage and took title to the property. In 1945 the trustee sold and conveyed the property for a consideration of $125,000 in cash and a bond and mortgage in the amount of $500,000.

In 1938 the mortgagor of the Gansevoort property defaulted, and the trustee foreclosed and took title to the property in the same year. In 1944 the property was sold and conveyed by the trustee for $100,000 in cash and a bond and mortgage in the sum of $200,000. The trust appears to have suffered a substantial loss on each transaction.

Thereafter the trustee computed the interests in the sales proceeds from the properties as between the life beneficiaries and principal in accordance with the applicable law of New York, N. Y. Personal Property Law, McKinney's Consol.Laws, c. 41, § 17–c; In re Chapal's Will, 269 N.Y. 464, 199 N.E. 762, 103 A.L.R. 1268; In re Otis' Will, 276 N.Y. 101, 11 N.E.2d 556, 115 A.L.R. 875 (setting forth the so-called Chapal-Otis rule). In accordance with these computations the trustee on May 1, 1945, made allocation in its records of the sales proceeds among the participating interests, reflecting the amounts allotted to principal and income beneficiaries. It turned over the cash portion of the sales proceeds allocated to decedent in 1945, but retained the allocated portions of the bonds and mortgages.

Dula died on November 15, 1945, thereby terminating the trust. But the trustee continued to hold the allocated portions of the bonds and mortgages pending settlement of its final account. In 1947 the Surrogate's Court, County of New York, entered a final decree ordering the distribution to petitioner-executrix of securities having a value of $35,730.44, representing the balance of income accruing to decedent through November 15, 1945. Thereafter the executrix agreed to accept in kind, in lieu of the money value, the undivided and equitable interests in the bonds and mortgag-

es described in the Surrogate's final decree.

On or about March 15, 1948, amended tax returns (on a cash basis for calendar years) were filed on behalf of decedent for the years 1933 to 1944 inclusive and for the taxable period involved herein. In the amended returns there was included in each year an allocable amount of the total interest of decedent in the above described bonds and mortgages as income. The cash distributions received in 1945 were not included therein. The executrix thereafter paid the additional tax shown on the amended returns and, where interest was due, paid it according to a schedule introduced in evidence.

In determining the deficiency in issue, the Commissioner included in the decedent's income for the taxable period, January 1, 1945, to November 15, 1945, the allocations made by the trustee to the trust for decedent with respect to the 45th Street and Gansevoort properties in 1945, totaling $7,899.18 in cash and $36,262.52 in bonds and mortgages. The Tax Court held that the portion of the sales proceeds allocated to the decedent from the 1944 sale was not, but the portion of the sales proceeds allocated to him from the 1945 sale was, taxable to him in his last taxable period, January 1, 1945, to November 15, 1945. Petitioner argues that the amount in issue was properly taxable in 1947 when the Surrogate's decree was entered.[1]

We think the Tax Court was correct in holding this case to be controlled by Johnston v. Helvering, 2 Cir., 141 F.2d 208, affirming 1 T.C. 228, certiorari denied Johnston v. Commissioner of Internal Revenue, 323 U.S. 715, 65 S.Ct. 41, 89 L.Ed. 575, which determined the taxability of "income" allocated to life beneficiaries of trusts engaged in mortgage-salvage operations. In the Johnston case the trustees, after foreclosing the mortgage on certain trust property, bid in the property and later sold it in 1937. The proceeds of sale as in this case consisted of cash and a purchase money bond and mortgage. According to the findings of the Tax Court in that case no part of the bond and mortgage was transferred in 1937 to the income beneficiaries, nor was any certificate of interest given them. Nevertheless in the opinion which we affirmed, the Tax Court held that the beneficiaries' proportional part of the bond and mortgage represented distributable income to them in that year.[2]

It is true, as petitioner contends, that the Johnston case concerned itself primarily with the question whether the cash payments which the taxpayers there received and the proportion of the mortgage with which they were credited should be regarded as taxable income within § 162(b) or § 22(a) of the Revenue Act of 1936, or indeed whether they might be so regarded at all under the Sixteenth Amendment. In the present case there is no dispute about taxability as such;[3] only the year of taxation is in

---

1. Petitioner does not press here her further contention before the Tax Court that the apportioned proceeds of the sale of the mortgaged property should have been taxed allocably over the years prior to 1945 during which the mortgage-salvage operations were carried on.

2. " * * * Although no part of the bond and mortgage nor any interest therein has at any time been transferred or assigned by the trustees to either of the petitioners (see paragraph 20 of our findings), it would seem that from and after the date of sale on January 11, 1937, each petitioner was the equitable owner of property rights in the bond and mortgage which had a fair market value of $48,105.48. It was a right which either one could have sold or given away. It is true that it may have been impracticable for the trustees to have divided the bond and mortgage and to have distributed to petitioners their part within the taxable year, but nevertheless we think petitioners' proportional part of the bond and mortgage represented distributable income to them in that year." 1 T.C. 228, at page 240.

3. In the Johnston case we held that a life beneficiary had realized taxable income upon allocation to him of mortgage-salvage proceeds, even though the trust

issue. But the result and rationale of the Johnston case appear to determine the latter issue, as well as the former. For the result in that case [4] was an application of the then equivalent of § 162 (b) of the Internal Revenue Code of 1939, 26 U.S.C. § 162(b), which provides that income from property held in trust shall be taxable to the income beneficiaries of the trust if it "is to be distributed currently" by the fiduciary to such beneficiaries, "whether distributed to them or not." [5] The statute defines income which "is to be distributed currently" to include income of the taxable year which within the taxable year "becomes payable to" the beneficiary. Thus, "[t]he test of taxability to the beneficiary is not receipt of income, but the present right to receive it." Freuler v. Helvering, 291 U.S. 35, 42, 54 S.Ct. 308, 311, 78 L.Ed. 634.

Petitioner contends that the term "distributed currently" as used in § 162(b) must be construed in the light of the general annualization provisions of the Internal Revenue Code contained in § 42, 26 U.S.C. § 42, and its accompanying regulations, which provide for taxation to a cash basis taxpayer in the year when income is reduced to possession or constructively received. The contention is that only when the beneficiary has control over the distribution of the income is it "currently distributable." See C. I. R. v. First Trust & Deposit Co., 2 Cir., 118 F.2d 449. Petitioner further argues that the allocation made by the trustee in 1945 was a mere computation or rough approximation and that no income became currently distributable to petitioner until the year 1947 following the decree of the Surrogate's Court. Evidence was introduced showing that petitioner made several efforts to secure distribution of income after the death of decedent, but that the trustee, on advice of counsel, refused to make distribution until the decree of settlement was entered by the Surrogate's Court. It appears that the refusal of the trustee to make distribution was based upon its interpretation of In re Martin's Estate, 165 Misc. 597, 609, 610, 1 N.Y.S.2d 80. In that case, where one of the questions was the right of the trustees to enter into a consolidation and extension agreement with a mortgagor, Surrogate Delehanty used language susceptible of the interpretation that the equitable conversion of a purchase money mortgage into shares of accrued income and remainder capital does not occur until distribution is directed by the court.

██ But we think that this conservative interpretation of the law of New York is not controlling upon the issue of time of taxability of the proceeds. In accord with the intent and purpose of § 162, tax consequences to the beneficiaries cannot be determined by the timing of payment over by the trustee, even though he may be guided by an honest, if doubtful, interpretation of the state law. Cf. In re Walbridge's Will, 192 Misc. 746, 747, 748, 80 N.Y.S.2d 676; In re McManus' Will, 282 N.Y. 420, 426, 26 N.E.2d 960; In re Culver's Estate, Sur., 57 N.Y.S.2d 598, affirmed 268 App.Div. 972, 52 N.Y.S.2d 577, reversed on other

had realized no taxable gain from the resale. The question was not without difficulties, which the opinion disclosed and the dissents in the Tax Court explored. So the opinion is subjected to a reasoned criticism in Rabkin & Johnson, Trust and Beneficiary Under the Income Tax, 1 Tax L.Rev. 117, 142–144, but is more favorably regarded in Note, 1 Tax L.Rev. 348, 350–353. There is of course no point in stirring again these troubled waters, since the holding is not challenged on this appeal and since the 1954 Code, 26 U.S.C. § 662(a) (1), appears to provide a new point of departure, if not additional clarity. See 3 U.S.Code Cong. & Adm. News 4338, 4989 (1954).

4. See also C. I. R. v. Gutman, 2 Cir., 143 F.2d 201; McCullough v. C. I. R., 2 Cir., 153 F.2d 345; Plunkett v. C. I. R., 1 Cir., 118 F.2d 644.

5. The provision which actually applied in the Johnston case was § 162(b) of the Revenue Act of 1936, substantially identical to the corresponding provision in the 1939 code as amended.

grounds 294 N.Y. 321, 62 N.E.2d 213. Income of a trust distributable to a beneficiary is taxable to the beneficiary, even though the trustee refuses to distribute it pending court approval of his action. See Bedford v. C. I. R., 2 Cir., 150 F.2d 341; DeBrabant v. C. I. R., 2 Cir., 90 F.2d 433. Thus in the DeBrabant case, supra, 2 Cir., 90 F.2d 433, 435, we said: "It seems evident that the income of any trust which under the terms of the trust instrument is made payable to a life beneficiary is 'to be distributed currently by the fiduciary,' * * *."

■ So the amounts allocated as income to the life beneficiary in accordance with the law of New York—N. Y. Personal Property Law, § 17–c; In re Chapal's Will, supra, 269 N.Y. 464, 199 N.E. 762, 103 A.L.R. 1268; In re Otis' Will, supra, 276 N.Y. 101, 11 N.E.2d 556, 115 A.L.R. 875—must, following the scheme of the Internal Revenue Code, become taxable to the beneficiary at the time the proceeds are received by the trust. Nor do we find merit to petitioner's contention that this income, consisting of undivided interests in bonds and mortgages, is not of the kind intended by the testator to be distributed currently. C. I. R. v. First Trust & Deposit Co., supra, 2 Cir., 118 F.2d 449, where the court found the trustee under no duty to make periodic distributions, is quite distinguishable.

■ Finally, petitioner argues that respondent is estopped from making the determination in issue because he accepted returns on behalf of decedent in which the income here involved was allocated over the years 1933 to 1944, and in some instances demanded and received additional tax and interest as thus reported. But the amended returns were voluntarily filed, no misrepresentations were made, and the Commissioner did nothing to induce their filing. Hence if he were subject to an estoppel, there was here no basis for it.

Affirmed.